# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JON GRANT,

      Plaintiff,

        v.

GAHANNA-JEFFERSON PUBLIC
SCHOOL DISTRICT,

      Defendant.

                    Case No. 2:18-cv-963
                    Judge Edmund A. Sargus, Jr.
                    Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

The Matter before the Court is Defendant Gahanna-Jefferson Public School District's ("Defendant") Motion for Summary Judgment.  (ECF No. 30.)  Plaintiff Jon Grant ("Plaintiff") has responded and Defendant has replied.  (ECF Nos. 37, 38.)  Thus, the matter is ripe for review. For the following reasons, the motion (ECF No. 30) is **GRANTED**.

## I.

Plaintiff brings this case under 42 U.S.C. § 1983, the Fair Labor Standards Act ("FLSA") and Ohio Revised Code Title 4112, *et seq.*  (Compl. ¶¶ 25–45, ECF No. 1.)  Defendant is an Ohio public school district serving approximately 7,900 students.  (Barrett Aff. ¶ 3, ECF No. 30-1.) Defendant's Board of Education (the "Board") adopts policies establishing rules and expectations for Defendant's staff's workplace conduct.  (*Id.* ¶ 6.)  For example, Gahanna-Jefferson Board Policy 4210 mandates that all employees "recognize the basic dignities of all individuals with whom they interact in the performance of their duties."  (*Id.*; Loucka Dep. 12:1–17, Ex. C, ECF No. 25.)  Similarly, Gahanna-Jefferson Board Policy 4362 ("Policy 4362") provides that "[t]he

Board will vigorously enforce its prohibition against all discriminatory harassment based on race, color, [or] national origin . . . ." (*Id.*; Loucka Dep. 16:16–17:10, Ex. C.)

Defendant hired Plaintiff in August of 2006 as a custodial maintenance worker. (Grant Dep. 21:7–11, 22:23–23:3, ECF No. 21.) Defendant promoted Plaintiff to custodial manager in August of 2015 and in one month returned him to the position of custodial maintenance worker at his own request. (*Id.* 47:14–49:25, Exs. 3–4.) In September of 2015, when Plaintiff returned to the custodial maintenance position, according to Defendant his performance began to decline. (Barrett Aff. ¶ 7.)

For example, for the 2015–16 school year Plaintiff received "below expectation" ratings on his annual performance evaluation with respect to his attitude, enthusiasm, and ability to accept constructive criticism as well as his quality and quantity of work. (Grant Dep. 35:10–36:19, Ex. 1.) Additionally, Plaintiff's then-supervisor Dustin Cullen ("Supervisor Cullen), specifically noted on the evaluation that "[s]ince [Plaintiff] mov[ed] to Lincoln Hall, there have been complaints regarding the cleanliness of bathrooms. Complaints have suggested uncleaned areas go days without attention. Once prompted, those areas are cleaned promptly. The goal is for things to be taken care without prompting." (*Id.*) The remainder of the evaluation rated Plaintiff at "meets expectations" with two categories being rated as "exceeds expectations." (*Id.*) Plaintiff signed this evaluation and admitted that it was "less than favorable." (*Id.* 29:3.) Plaintiff stated that after this evaluation he "worked harder to better [himself] and to perform at higher expectations," which included taking very few days off. (*Id.* 43:3–18.)

In the 2016–17 school year, Plaintiff again received negative performance ratings on his evaluation. Specifically, Plaintiff received "below expectations" ratings for work ethic, ability to comply with assigned work times/lunch times/ break times, and quality and quantity of work. (*Id.*

39:7–22, Ex. 2.)  The evaluation specifically noted that while his attitude had improved, "[s]taff ha[d] complained about [the] cleanliness of restrooms on each route [Plaintiff] ha[d] been on [for] the past two years."  (*Id.* 39:23–40:10, Ex. 2.)  Further, "Mr. Lofton saw [Plaintiff] leave the parking lot around 4:00PM, which [was] not a designated break time."  (*Id.*)  Supervisor Cullen suggested that Plaintiff "spend time more effectively in restrooms."  (*Id.*)  The remainder of the evaluation rated Plaintiff at "meets expectations" with no ratings of "exceeds expectations."  (*Id.*)  Plaintiff signed this evaluation and stated it was "less than favorable."  (*Id.* 29:3, 46:16–25.)  Plaintiff did not dispute these evaluations at the time but does now.  (*See id.*)

In addition to these formal evaluations, Plaintiff received a letter on September 22, 2016, from Supervisor Cullen.  The letter stated:

> This letter is to inform you that you are falling short of your responsibilities in Hamilton Hall.  It is an expectation that our custodians are detail-focused and that is not apparent in your route.  In particular, the restrooms are in very poor condition and are unsafe for students, staff and community members, especially by the auditorium lobby.  The attached photographs show a negligence of this area and it needs to be of top concern going forward.  Failure to tend to this will result in further action.

(*Id.* 53:16–54:12, Ex. 6.)  This letter included several photographs of unclean restrooms.  (*See id.*)

Additionally, on January 31, 2018, Scott Lofton, Defendant's business director ("Director Lofton"), issued Plaintiff a written reprimand which stated:

> On 1/23/18 at 3:30 pm you were discovered in a custodial closet sitting in a chair at a desk scrolling on your phone.  When asked what you were doing, you replied "nothing."  Your shift began at 3 pm that day.

> On 1/30/18 at 4:00 pm you were again discovered in the custodial closet sitting at the same desk scrolling through your phone.  Once again, when asked what you were doing you replied, "nothing."  This is as reported as first-hand knowledge through Daniel Olzak.   Any future violations may result in suspension or termination.

(*Id.* 57:15–58:3, Ex. 7.)  Plaintiff believes he "may" have been on his phone.  (*Id.* 59:4–6.)  Plaintiff disputes, however, that he said he was not doing anything.  (*Id.* 59:18–22.)

In February of 2018, Plaintiff met with Defendant's human-resources director Matt Cygnor ("Director Cygnor") and Director Lofton to discuss the written reprimand and several issues he saw including:[1] FLSA overtime violations, nepotism, failure to provide equal opportunity job offers, and a general inquiry into whether he could organize a group of individuals to unionize. (Grant Dep. 69:15–21, 72:6–13, 74:24–75:1, 75:13–76:3.)  Specifically, with regards to Plaintiff's concerns over FLSA violations, Plaintiff believed "classified hourly employees were working above and beyond their work hours and were [not] getting paid for them."  (*Id.* 76:22–24.)

On March 12, 2018, Emerson Santos, another custodian working for Defendant, emailed Defendant's superintendent Steve Barrett ("Superintendent Barrett"), Director Cygnor, and Director Lofton, complaining that Plaintiff had been bullying and harassing him for multiple years. (Barrett Dep. 15:17–17:7, Ex. E, ECF No. 23; Santos Dep. 15:17–20, ECF No. 29.)  This email stated that Plaintiff made comments about Mr. Santos not completing work he was volunteering to do, asking questions about how Mr. Santos could have gotten hired, and assigning him work despite the fact that he did not have authority to do so.  (*See id.*)  Additionally, Mr. Santos informed Superintendent Barrett in person that he was afraid of Plaintiff, Plaintiff followed him around, bullied him, gave him negative feedback when he was not his supervisor, and talked about his weapons around him.  (*Id.* 11:19–12:19.)

On March 16, 2018, Defendant placed Plaintiff on administrative leave.  (Barrett Aff. ¶ 8; Grant Dep. 102:24–103:8, Ex. 8.)  Plaintiff testified that when Director Cygnor informed him he

---

[1] The briefing is not all together clear as to how many meetings occurred between Plaintiff and the two Directors.  (*See e.g.,* Pl.'s Resp. at 3.)  It appears this discussion may have occurred over multiple meetings all in a similar time frame. (*See id.*)

4

was being placed on leave, Plaintiff asked Director Cygnor to write down all of the reasons why. (Grant Dep. 105:7–11.)  Plaintiff stated Director Cygnor declined to do so but gave Plaintiff a piece of paper and a pen to write down the reasons himself.  (*Id.* 105:11–15.)  Plaintiff wrote down the following reasons: "Emerson Santos," "stealing time from the district," "not performing work duties," "video recording on a personal device," and "union thing."  (*Id.* Ex. 9.)  According to Plaintiff, Director Cygnor told Plaintiff that he had "put a target on [his] back."  (*Id.* 114:3–4.)

Defendant began an investigation of the harassment and bullying claims against Plaintiff pursuant to Policy 4362.  (*Id.*)  Director Cygnor conducted the investigation which included interviewing Plaintiff, Mr. Santos, and other witnesses.  (*Id.*)  During this investigation, Defendant examined a time sheet where Plaintiff alleged he worked overtime hours at a weekend band auditorium event on February 25, 2018 and had been paid for such work.  (Lofton Dep. 13:20–14:4, Ex. M, ECF No. 27.)  Director Lofton, who approved the request, had concerns:

> Because he turned in the time sheet, and the time sheet said that he put on there he could not take a break.  So he put down he worked 6 ½ hours.  Knowing the event he was covering that weekend, which was a band concert, not a lot going on, I mean, everybody comes in, they sit down, they listen to the band concert, they might use the restroom, but there's not a lot of crazy stuff going on.  So when I saw that that popped up a red flag for me to say, you know, I can't believe he—I wonder what was going on that he couldn't take a break.

(*Id.* 11:21–12:27.)  Accordingly, Director Lofton and Supervisor Cullen reviewed the routine videotape footage from that day.  (*Id.* 11:15–17; Barrett Aff. ¶ 9.)  The footage showed Plaintiff took extended breaks inside a room that day.  (*Id.*; Barrett Aff. ¶ 9.)  Plaintiff testified he was not taking breaks but instead "on the computer putting in work orders," and "organiz[ing] supplies." (Grant Dep. 132:16–18, 136:18–20.)

On April 18, 2018 Director Cygnor sent Plaintiff a "Pre-termination Conference Notification" which provided three reasons Defendant was considering the termination of Plaintiff's employment.  (*Id.* Ex. 10.)  The letter stated:

**1.) Failure of good behavior**
This allegation stems from bullying and harassing a current co-worker and a past co-worker.

**2.) Dishonesty—Stealing time from the District**
This allegation stems from a timesheet submitted by you stating that you had worked 6.5 hours on February 25, 2018 without taking a lunch break.

**3.) Neglect of Duty—Not performing assigned work duties, specifically restrooms**
This allegation stems from complaints regarding your inadequate cleaning of building restrooms (e.g., overtime hours for special event on February 25, 2018, evaluations, and a September 2016 supervisor write-up).

(*Id.*)

The investigation corroborated Plaintiff's poor performance, overtime theft, and harassment and bullying of a co-worker.  (Barrett Aff. ¶ 11; Louka Dep. 40:17–19; Lofton Dep. 12:8–12.)  On April 20, 2018, Defendant held a pre-termination *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) conference with Plaintiff and allowed him to address and respond to the claims against him.  (Grant Dep. 128:3–5.)  Director Cygnor was at the meeting.  (*Id.* 128:13–14.)  In the end, Superintendent Barrett concluded that Plaintiff had harassed, and bullied Mr. Santos based on his Filipino race/national origin, and thus, violated Policy 4362.  (Barrett Aff. ¶¶ 10–11.)  Mr. Cygnor, in contrast, concluded that Plaintiff had harassed and bullied Mr. Santos, but not based on his race.  (*Id.* ¶ 11.)  On August 8, 2018, Superintendent Barrett recommended the Board terminate Plaintiff.  (*Id.* ¶ 12.) Superintendent Barrett did not have direct knowledge of the events that had occurred with Plaintiff but received the information from his direct reports and

their investigation. (Barrett Dep. 25:10–11.) The Board terminated Plaintiff on August 9, 2018. (*Id.*)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III.

Defendant moves for summary judgment on all three of Plaintiff's claims.

### 1. First Amendment Retaliation

Plaintiff brings his first claim under 42 U.S.C. § 1983 alleging that he participated in an activity protected by the First Amendment and was subjected to an adverse employment action as a result of such protected activity. (Compl. ¶¶ 25–33.) Defendant argues it is entitled to summary judgment on this claim because there is no evidence Defendant had an unconstitutional policy, custom, or practice, that he spoke on a matter of public concern, or that his discharge was motivated by his engagement in protected activity. (Def.'s Mot. Summ. J. at 15–23, ECF No. 30.) Additionally, Defendant contends it is entitled to summary judgment because it still would have terminated Plaintiff absent his alleged protected speech. (*Id.* at 23–25.) In response, Plaintiff contends he can make out the prima facie case for First Amendment retaliation. (Pl.'s Mem. Contra Def. Mot. Summ. J. at 8–13, ECF No. 37, hereinafter "Pl.'s Resp.")

Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. A prima facie case under Section 1983 requires (1) conduct by an individual acting under color of state law, and (2) this conduct must deprive the plaintiff of rights secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not of itself establish any substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Upsher v.*

*Grosse Pointe Pub. Sch. Sys.*, 358 F.3d 448, 452 (6th Cir. 2002) ("Section 1983 is not self-executing, but rather provides a remedy 'for vindicating federal rights elsewhere conferred.'" (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994))).

### a.  Municipal Liability

In order to recover from a municipality under § 1983, a plaintiff must show that "the 'moving force' behind the constitutional violation" was the defendant's official policy or custom. *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 492–93 (6th Cir. 2006).  That is, "the plaintiff must prove that the municipality itself caused the constitutional violation; respondeat superior does not attach under Section 1983."  *Id.* at 493 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 691, 694–95 (1978)); *see also Curtis v. Breathitt Cnty. Fiscal Court*, 756 F. App'x 519, 525–26 (6th Cir. 2018) ("[The plaintiff] cannot base her claims against [the county court] solely on [a judge's] conduct because respondeat superior is not available as a theory of recovery under section 1983." (internal citations omitted)); *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("[U]nder § 1983, local governments are responsible only for their own illegal acts.  They are not vicariously liable . . . for their employees' actions.").  Thus, a municipality may be liable for "actions of its authorized policy makers 'where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"  *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014).

Defendant states "Plaintiff cannot point to any evidence establishing that [Defendant] terminated his employment pursuant to an unconstitutional policy, custom, or practice for one very basic reason—no such policy, custom, or practice exists."  (Def.'s Mot. Summ. J. at 16.)  Plaintiff

does not respond to this argument in his brief.  As such, Plaintiff has conceded this argument and Defendant is entitled to summary judgment on the First Amendment retaliation claim.  *See Campbell v. Hines*, No. 12-4329, 2013 U.S. App. LEXIS 26071, at *13–14 (6th Cir. Aug. 8, 2013) ("In light of [the plaintiff's] failure to address the defendant's arguments in his response to the summary judgment motion, the district court properly declined to consider the merits of the claims."); *Hays v. Bolton*, No. 1:09 CV 2840, 2011 U.S. Dist. LEXIS 1584, at *17 (N.D. Ohio Jan. 7, 2011) ("Plaintiff failed to address Defendant's motion for summary judgment on the Fourteenth Amendment Claim in his opposition brief.  Accordingly, Plaintiff has conceded this argument and summary judgment is entered in favor of Defendants.").  Even if Plaintiff could show that his termination was pursuant to Defendant's policy or custom, Plaintiff has not provided evidence to create a genuine issue of material fact as to the first element of the prima facie case.

### b.  The Prima Facie Case

In order to succeed on a First Amendment retaliation claim, a plaintiff must demonstrate: "(1) that she was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action as motivated at least in part as a response to the exercise of plaintiff's constitutional rights."  *Strouss v. Mich. Dep't of Corrs.*, 250 F.3d 336, 345 (6th Cir. 2001).  "When the plaintiff is a public employee, she must make additional showings to demonstrate that her conduct was protected."  *Id.* at 345–46.

"First, the employee must show that her speech touched on matters of public concern."  *Id.* at 346.  "Second, the employee's interest 'in commenting upon matters of public concern' must be found to outweigh 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"  *Id.* (quoting *Pickering v. Bd. of Educ.*, 391

U.S. 536, 568 (1968)).  The purpose of this requirement "is to strike a proper balance between the employee's right, as a citizen, to comment on matters of public concern and the government's legitimate interest, as an employer, in regulating speech of its employee as a means of efficiently providing public services through its employees."  *Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 248 (6th Cir. 2007).

"Matters of public concern are those that can 'be fairly considered as relating to any matter of political, social, or other concern to the community[.]'"  *Id.* (quoting *Connick*, 461 U.S. at 146). Importantly, in the Sixth Circuit:

> Established law provides that 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'

*Anderson v. Ravenna Twp. Fire Dep't*, 159 F. App'x 619, 625 (6th Cir. 2005); *see also Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2011) ("Such matters of public concern are to be contrasted with internal personnel disputes or complaints about an employer's performance."); *Van Compernolle*, 241 F. App'x at 250 ("[I]t is clear that internal grievances that are purely personal in nature are not matters of public concern.").

Additionally, and importantly for this case, the Sixth Circuit has held that "an employee's speech, activity or association, merely because it is union-related, does not touch on a matter of public concern as matter of law." *Akers v. McGinnis*, 325 F.3d 1030, 1038 (6th Cir. 2003) (quoting *Boals v. Gray*, 775 F.2d 686, 693 (6th Cir. 1985)); *see also Gillis v. Miller*, 845 F.3d 677, 689 (6th Cir. 2017) ("In this circuit, there is not a per se rule regarding union-related speech by a public employee.  It may or may not address a matter of public concern depending on the facts of the case." (citations omitted)).  Whether an employee's speech touches on a matter of public concern

is a matter of law for the court to decide.  *Van Compernolle*, 241 F. App'x at 249; *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003).

Plaintiff's Complaint states that he was terminated in retaliation for participating in "union activities and the creation of a union for custodial employees."  (Compl. ¶ 27.)  Plaintiff states in his brief that he spoke to Director Cygnor "about the formation of a union to protect the staff from abuses by Defendant including the consistent requirement to work 'volunteer' hours before and after [their] shift[s] for which the staff were not paid."  (Pl.'s Resp. at 8.)  Plaintiff also contends he told the Directors he was starting a union.  (*Id.*)  Plaintiff does not cite evidence in support of these statements.  (*See id.*)  Even if Plaintiff did provide record evidence somewhere in his brief to support such statements, he has not shown that this speech was a matter of public concern.

Plaintiff's speech was related to the organization of a union for his personal benefit, and the benefit of the other custodians.  Plaintiff discussed the need for a union to resolve internal personnel matters such as not being paid for volunteer work.  This discussion did not implicate the political process or the public in any way.  There is no evidence that this discussion around creating a union constituted a matter of concern to the public.  *See Anderson*, 159 F. App'x at 625 (finding the plaintiff "provide[d] no support or even an argument for how his discussion with [another employee] regarding the organization of a union constituted a matter of public concern.  Rather to the extent that [the plaintiff] was engaged in any discussions regarding the formation of a union, such formation was for his (and other employees') personal benefit, not the public's."); *Olembiewski v. Logie*, 852 F. Supp. 2d 908, 919–20 (N.D. Ohio 2012) (finding the plaintiff's action of posting and circulating a petition relating to a new attendance policy was directed only at the union members and employees, but not the public at large, and thus, while "couched in allegations" related to "union activity" did not rise to the level of matters of public concern); *Van*

*Compernolle*, 240 F. App'x at 250 ("In the absence of any evidence that [the plaintiff's] union-related activity on behalf of other officers encompassed more than internal personnel issues the record does not show that [the plaintiff's] activity focused on issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government . . .  [Further, a] group effort to gain more overtime is no less an internal dispute than if it were the effort of one officer."); *Ugner v. City of Mentor*, 387 F. App'x 589, 593 (6th Cir. 2010) (finding the plaintiff's "references to the inner workings of a government office, union related or not, without implications of the political process or the public interest, fail[ed] to bring her speech within the ambit of public concern").  Thus, Plaintiff has not provided any evidence which could create a genuine dispute of material fact as to the first element of First Amendment retaliation and Defendant is entitled to judgment on this claim.  *See Anderson*, 159 F. App'x at 625–26 (affirming the district court's dismissal of the plaintiff's First Amendment retaliation claim because there was no allegation that the speech was a matter of public concern); *Van Compernolle*, 241 F. App'x at 252 (affirming the district court's grant of summary judgment on the plaintiff's First Amendment retaliation claim finding no genuine dispute of material fact that the plaintiff's speech was not a matter of public concern).

In sum, Plaintiff cannot succeed on his claim against Defendant under § 1983 because he has not provided any evidence of a custom or policy which would allow him to sue a municipality. Additionally, even if Plaintiff had shown a dispute as to whether there was a policy or custom under which he could sue Defendant, he has not provided any evidence as to the first element of the prima facie case.  There is no genuine dispute of material fact as to Plaintiff's inability to succeed on a First Amendment retaliation claim, and thus, Defendant's motion for summary judgment on this claim is **GRANTED**.

### 2.  FLSA Retaliation

Plaintiff brings his second claim under the FLSA arguing that Defendant subjected him to an adverse action because he engaged in an FLSA protected activity.  (Compl. ¶¶ 34–38.) Defendant argues that Plaintiff cannot satisfy the prima facie case for this claim because the decision-makers responsible for his termination did not know of his purported protected conduct. (Def.'s Mot. Summ. J. at 26–27.)  Additionally, Defendant contends it had an honest belief that there were legitimate non-pretextual reasons justifying his termination.  (*Id.* at 27–28.)  Plaintiff claims he can satisfy his prima facie case with the cat's paw theory of liability and Defendant's honest belief is not supported by the evidence.  (Pl.'s Resp. at 13–15.)

"The anti-retaliation provision of the FLSA provides that an employer is prohibited from 'discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted . . . any proceeding under [the FLSA].'"  *Adair*, 452 F.3d at 489 (quoting 29 U.S.C. §215(a)(3)).  "The burden-shifting analysis in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies to a FLSA claim of retaliation."  *Id.*  A prima facie case of FLSA retaliation requires the plaintiff to show that: "(1) he or she engaged in protected activity under the FLSA; (2) his or her exercise of his right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Id.*

If the plaintiff establishes the prima facie case, there is a presumption that the employer unlawfully discriminated against the employee.  *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).  "[T]he burden [] shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action."  *Id.* (citing *McDonnel Douglas*, 411 U.S. at 802).  Finally, if the defendant carries this burden "the plaintiff then must prove by a

preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination." *Id.* (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)). A plaintiff may demonstrate pretext by showing: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the defendant's adverse action; or (3) the defendant's proffered reason was insufficient to motivate the action." *Pettit v. Steppingstone Ctr. for the Potentially Gifted*, 429 F. App'x 524, 535 (6th Cir. 2011).

### a. The Prima Facie Case

Defendant argues there is no genuine dispute of material fact that Plaintiff cannot show a causal connection between his purported protected activity and his termination. (Def.'s Mot. Summ. J. at 26–27.)

"[T]o establish the element of causal link a plaintiff is required to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Pettit*, 429 F. App'x at 533. "[T]hat the actions complained of followed the protected activity closely in time, standing alone, is insufficient to establish the causation element of a retaliation claim." *Adair*, 452 F.3d at 490 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)); *see also Pettit*, 429 F. App'x at 533 ("Closeness in time between the protected activity and the adverse action is strong evidence, but temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim." (internal citations omitted)). Additionally, "[s]ubjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation." *Id.* (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992)). Importantly, there is no causal connection when the decision-makers were not aware of the plaintiff's protected conduct when they made the decision to terminate him. *See Auten v. Brooks*, No. 2:05-cv-0040, 2006 U.S. Dist. LEXIS 50747, at *20 (S.D. Ohio July 25, 2006); *Smith v.*

*Allstate Inc. Co.*, No. 5:04CV2055, 2005 U.S. Dist. LEXIS 13015, at * 41 (N.D. Ohio June 30, 2005).

Defendant argues that neither Superintendent Barrett nor the Board knew about Plaintiff's complaints as to Defendant's failure to pay overtime as the FLSA requires.  The Court agrees that the evidence supports this contention, and Plaintiff does not argue otherwise.  (*See* Barrett Aff. ¶ 14; Barrett Dep. 28:11–14; Pl.'s Resp. at 14.)  Plaintiff argues, however, that the Directors' knowledge and the cat's paw theory of liability establish a causal connection.  (Pl.'s Resp. at 14.)

The cat's-paw theory of liability "refers to a situation in which a biased subordinate, who lacks decision making power, uses a formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action."  *Marshall v. Rawlings Co., LLC*, 854 F.3d 368, 377 (6th Cir. 2017) (quoting *EEEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006)); *see also Wheeler v. City of Columbus*, No. 2:16-CV-1159, 2019 U.S. Dist. LEXIS 133518, at *30 (S.D. Ohio Aug. 8, 2019) ("A Cat's Paw theory of the case refers to one used by another to accomplish his purposes." (quoting *Marshall*, 854 F.3d at 377)).  "A plaintiff alleging liability under the cat's paw theory seeks 'to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision.'"  *Id.* (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011)).  The Sixth Circuit has explained the goals of the cat's paw theory of liability:

> First, the cat's paw theory addresses situations in which decisionmakers unthinkingly adopt the recommendations of their biased lower-level supervisors; second, it "forecloses a strategic option for employers who might seek to evade liability . . . through willful blindness as to the source of reports and recommendations."

*Id.* at 378 (quoting *EEOC*, 450 F.3d at 486).

"[T]here is no 'hard-and-fast rule' that a decisionmaker's independent investigation defeats a cat's paw claim." *Id.* at 380 (citing *Staub*, 562 U.S. at 420). Rather, "an independent investigation defeats a cat's paw claim only when the investigation 'determine[es] that the adverse action was, apart from the supervisor's recommendation, entirely justified.'" *Id.* (citing *Staub*, 562 U.S. at 421).

Plaintiff contends that Superintendent Barrett "admits he did no investigation and that he had no personal knowledge of any of the basis for [Plaintiff's] termination. Further [Superintendent] Barrett testified that he relied solely on the investigations of his direct reports, [Directors] Cygnor and Lofton." (Pl.'s Resp. at 13.) Plaintiff concludes that because Directors Cygnor and Lofton were aware of Plaintiff's complaints related to FLSA overtime, under a cat's paw theory of liability, there is a causal link. (*Id.* at 14–15.) There are several issues with Plaintiff's argument.

First, in making the above claims, Plaintiff cites to no record evidence for his contentions about Superintendent Barrett's lack of investigation, lack of personal knowledge, or reliance on Directors Cygnor and Lofton for his decision to recommend the Board terminate Plaintiff. Importantly, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact." *Auten*, 2006 U.S. Dist. LEXIS 50747 at *10 (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). Plaintiff's failure to direct the Court to evidence for such statements makes his argument unpersuasive.

Second, Plaintiff did not provide any authority showing the Sixth Circuit applies the cat's paw theory of liability to FLSA retaliation cases. (*See* Pl.'s Resp. at 12 (citing a series of cases applying the cat's paw theory of liability in different discrimination cases but none of which apply

it to an FLSA retaliation case). The Court is not aware of any cases in the Sixth Circuit extending the cat's paw theory of liability to FLSA retaliation. *See Bose v. Bea*, 947 F.3d 983, 989 (6th Cir. 2020) (noting the Sixth Circuit has extended cat's paw liability to FMLA discrimination claims, Title VII race discrimination claims, and Age Discrimination in Employment Act claims, without mentioning FLSA retaliation claims); *Henderson v. Chrysler Grp., LLC*, 610 F. App'x 488, 496 (6th Cir. 2015) (noting the Sixth Circuit has applied the cat's paw theory of liability to cases bought under Title VII for discrimination, and claims brought under the Uniformed Service Employment and Reemployment Rights Act). This Court cannot assume the Sixth Circuit would apply the cat's paw theory of liability to any discrimination or retaliation claim as the Sixth Circuit recently declined to allow a cat's paw theory of liability to be used in a Title IX retaliation case. *See id.* at 994. Further, Plaintiff has provided no argument as to why he believes the cat's paw theory of liability should or will be extended to cases brought alleging FLSA retaliation.[2]

The Court need not decide whether the cat's paw theory of liability should extend to FLSA retaliation cases today, however, because even if it did extend to FLSA retaliation cases, Plaintiff has failed to provide evidence of any illegal bias or animus from Directors Cygnor or Lofton. "An employer may be liable for a supervisor's discriminatory animus if the 'supervisor performs an act motivated by discriminatory animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is the proximate cause of the ultimate employment action.'" *Sharp v. Aker Plant Servs., Grp.*, 726 F.3d 789, 797 (6th Cir. 2013) (emphasis in original) (citing *Staub*, 526 U.S. at 422). "Discriminatory animus . . . requires a showing of prejudice, spite, or ill will." *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 626 (6th Cir. 2010);

---

[2] Plaintiff states only that "[t]he Sixth Circuit, the Supreme Court, and other circuit courts, regularly apply the cat's paw theory of liability to a variety of claims." (Pl.'s Resp. at 12.)

*see also Ferrill v. Parker Grp. Inc.*, 168 F.3d 468, 472–73 n.7 (11th Cir. 1999) (defining racial animus as "ill will, enmity, or hostility").

Plaintiff argues only that Directors Cygnor and Lofton knew about his complaint regarding FLSA overtime compensation.  Plaintiff provides no evidence that the Directors were biased against him because of such complaint.  The record does not show that Directors Cygnor and/ or Lofton had a retaliatory animus towards Plaintiff because he asked about overtime under the FLSA at one meeting.  The only evidence that could potentially support an animus is that Plaintiff states Director Cygnor told him he had a put a "target on [his] back" which led to him being put on administrative leave.  (*See* Grant Dep. 114:3–4.)  This discussion, however, was in relation to the reasons Plaintiff was being placed on administrative leave, which did not include his concern over FLSA overtime compensation and instead concerned his harassment, falsifying overtime, failing to perform his duties, and "union things."  (*See id.* 105:7–11, Ex. 9.)

Rather, as Defendant points out, the record shows Directors Cygnor and Lofton harbored no animus toward Plaintiff.  For example, after the investigation Superintendent Barrett found Plaintiff harassed and bullied Mr. Santos on account of his race, while Director Cygnor disagreed and found any harassment was not on account of Mr. Santos's race.   (Barrett Aff. ¶ 11.) Additionally, Director Cygnor testified that if Plaintiff had given him any specifics about not being paid for overtime he would have "went back and reviewed it and would have made sure if [Plaintiff] did [not] get paid that he would have got[ten] paid [sic]."  (Lofton Dep. 30:1–20.) Plaintiff's failure to provide any record evidence supporting the inference that either Director harbored a retaliatory animus towards him precludes him from succeeding on a cat's paw theory of liability.  *See Henderson*, 610 F. App'x at 496–497 (finding no reasonable juror could find the plaintiff did not receive a promotion due to taking FMLA leave because the plaintiff provided no

evidence his supervisor harbored retaliatory animus toward her for taking leave and thus, she could not avail herself to a cat's paw theory of liability); *Voltz v. Erie Cnty.*, 617 F. App'x 417, 425–26 (6th Cir. 2015) (finding the district court's dismissal of a discrimination claim based on a cat's paw theory of liability without error because there was no evidence to raise an inference that the supervisor exhibited a discriminatory animus toward the plaintiff); *Francis v. Davis H. Elliot Contr. Co.*, No. 3:12-cv-87, 2013 U.S. Dist. LEXIS 95663, at *9–10 (S.D. Ohio July 9, 2013) (denying reconsideration of a grant of partial summary judgment finding no reasonable jury could find a supervisor performed an act motivated by discriminatory animus intending to cause the adverse employment action).

In sum, there is no evidence that the decisionmakers, Superintendent Barrett or the Board, knew that Plaintiff asked about overtime compensation under the FLSA in a meeting with Directors Cygnor and Lofton. Additionally, there is no basis for imposing a cat's paw theory of liability in this case. Thus, Plaintiff cannot show a causal connection. Plaintiff has therefore failed to establish a prima face case of retaliation. Even if Plaintiff could make out the prima facie case, he has not produced any evidence which could show Defendant's reasons for terminating him were pretextual.

### b. Non-Discriminatory & Non-Pretextual Reason for Termination

If Plaintiff satisfies the prima-facie case, the burden shifts to Defendant to show a legitimate non-discriminatory reason for terminating Plaintiff. *Adair*, 452 F.3d at 489. If Defendant can put forth a legitimate non-discriminatory reason for the adverse employment action, Plaintiff must show such reason is a pretext for unlawful discrimination. *Id.* Under the Sixth Circuit's honest belief rule, "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, 'the employer must be able to establish its reasonable reliance on the

particularized facts that were before it at the time the decision was made.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2012) (quoting *Smith*, 155 F.3d at 806–07); *see also Balmer v. HCA, Inc*., 423 F.3d 606, 614 (6th Cir. 2005). Importantly, when "determining whether an employer 'reasonably relied on the particularized facts then before it,'" the Court does "'not require that the decisional process used by the employer be optimal or that it left no stone unturned.'" *Id.* (citing *Smith*, 155 F.3d at 806–07).

Defendant contends that it terminated Plaintiff because of poor performance, harassment and bullying, and theft of overtime compensation. (Def.'s Mot. Summ. J. at 28.) Defendant further explains that it relied on the results of the investigation which corroborated all aspects of Plaintiff's misconduct. (Barrett Aff. ¶ 11; Grant Dep. Exs. 1, 2, 5, 7; Barrett Dep. 26:7–10, 21:4–14; Lofton Dep. 12:9–12.) Through this evidence Defendant has satisfied its burden to show a legitimate, non-discriminatory reason for terminating Plaintiff. The burden now shifts to Plaintiff to show Defendant did not reasonably rely on the facts before it for this decision, and thus, this reason was a pretext for unlawful discrimination. *Wright*, 455 F.3d at 708.

Plaintiff contends that "the basis for [Plaintiff's] termination [is] not supported by any evidence." (Pl.'s Resp. at 14.) Plaintiff makes no citation to the record for this statement. This court does not have "a duty to search the entire record" to establish a genuine issue of material fact as to whether evidence supports the basis for Plaintiff's termination. *See Auten*, 2006 U.S. Dist. LEXIS 50747 at *10 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989)). Even sifting through Plaintiff's briefing for support for this statement, the Court disagrees.

First, Plaintiff attacks Defendant's honest belief by stating that Superintendent Barrett "[d]id [n]ot [d]o an [i]ndependent [i]nvestigation." (Pl.'s Resp. at 6.) Plaintiff notes that instead, Superintendent Barrett made his decision based on information related to him by Directors Cygnor

and Lofton. (Barrett Dep. 24–26.) The Court agrees that the evidence shows Superintendent Barrett received information from his direct reports. As Defendant points out, however, Superintendent Barrett also testified there was in fact an investigation into the reasons for Plaintiff's termination. (*Id.* 26:2–6; Barrett Aff. ¶¶ 10–11.) Additionally, while Directors Cygnor and Lofton did the investigation, Defendant notes Superintendent Barrett ultimately reviewed the results and came to his own independent conclusions. (Barrett Aff. ¶¶ 10–11.) For example, Superintendent Barrett disagreed with Director Cygnor as to the cause of Plaintiff's harassment of Mr. Santos finding it was based on his race when Director Cygnor had not found such cause. (*Id.* ¶ 11.) Thus, Plaintiff's attack on the investigation supporting Defendant's honest belief in the need for termination is not supported.

Next, Plaintiff contends that he was a "[g]ood [e]mployee" apparently attempting to show Defendant had no honest belief that Plaintiff performed poorly. (Pl.'s Resp. at 1–2.) Plaintiff points out that while his evaluations had negative feedback, they also had positive feedback. (*See* Grant Dep. Exs. 1–2.) Additionally, Plaintiff notes that no formal disciplinary actions were taken. (Lofton Dep. 27:15–22.) Despite this, however, Plaintiff does not dispute that there was evidence of ongoing complaints about his proficiency in cleaning restrooms. (*See* Grant Dep. Exs. 1–2, 6.) Evidence that Plaintiff performed well in some areas and did not receive any formal discipline does not undercut the reasonableness in Defendant's belief that Plaintiff's performance was poor in at least as much as cleaning restrooms, based on his evaluations and others' complaints.

Plaintiff also attacks Defendant's contention that he stole overtime compensation. (Pl.'s Resp. at 5–6.) Plaintiff argues the video did not show what was occurring inside of the room, and in fact he was working. (*Id.*) This was not the only evidence Defendant relied upon. Director Lofton testified he believed that based on the type event occurring and the amount of time Plaintiff

spent working, the situation would not have led to Plaintiff not having time for a break.  (Lofton Dep. 11:21–12:7, 14:14–15:1.)  Importantly, Plaintiff admits there is no video of what was occurring inside the room where Defendant believed Plaintiff was not working.  (Pl.'s Resp. at 5 (citing Lofton Dep.).)  Thus, Plaintiff does not argue the investigation into the stolen time was deficient in failing to consider all of the evidence.  In rebutting the honest belief rule, "the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."  *Majewski v. Auto Data Processing, Inc.*, 243 F.3d 1106, 1107 (6th Cir. 2001).  Thus, even if Plaintiff could show he did not steal overtime compensation, this is not enough to show Defendant did not have an honest belief that he did.  Plaintiff, by simply arguing he was working, Plaintiff fails to show that Defendant's reliance on those particular facts at hand, including the only video available and Director Lofton's analysis of the situation, was unreasonable.

Finally, Plaintiff contends the evidence regarding his alleged bullying of Mr. Santos is not reliable.  (Pl.'s Resp. at 6.)  Plaintiff points out that their stories diverge and there were no other witnesses to the events that occurred between them.  (Grant Dep. Ex. 9.)  While this may be true, the bullying and harassment is well documented in an email Mr. Santos sent to Superintendent Barrett.  (Santos Dep. Ex. A.)  Additionally, Superintendent Barrett testified Mr. Santos complained to him in person.  (Barrett Dep. 11:20–12:19.)  Again, simply arguing he did not in fact bully Mr. Santos is ineffective, as it does not show Defendant did not have an honest belief that he did.  *Majewski*, 243 F.3d at 1107.  Thus, again, Plaintiff has not shown that Defendant's decision was unreasonable given the particularized facts before it at the time.

In sum, there is no evidence upon which a reasonable jury could find that Defendant did not have an honest belief in its proffered reasons for terminating Plaintiff based on an investigation unworthy of credence.  *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 288 (6th Cir.

2012).  The Sixth Circuit has instructed district courts not "to micro-manage the process used by employers in making their employment decisions" and the honest belief rule "do[es] not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith*, 155 F.3d at 807.  Due to Plaintiff's failure to establish a genuine issue of material fact as to Defendant's proffered reason for his termination being pretextual, Defendant's motion for summary judgment is **GRANTED** on this claim.

### 3. Reverse Discrimination

Plaintiff brings his third claim under Ohio Revised Code Chapter 4112 alleging reverse discrimination in that Defendant terminated Plaintiff because he is Caucasian.  (Compl. ¶¶ 39–45.) Defendant argued in its motion for summary judgment that Plaintiff could not meet his burden to show he was discriminated against on the basis of his race.  (Def.'s Mot. Summ. J. at 28–39.) Plaintiff, in response, stated "Plaintiff [] does not present [an] argument on Defendant's Motion for Summary Judgment related to [Plaintiff's] reverse discrimination claim as there is no evidence to support this claim."  (Pl.'s Resp. at 1 n.1.)  Defendant's motion for summary judgment is **GRANTED** on this claim.

### IV.

For the reasons stated herein, Defendant's Motion for Summary Judgment (ECF No. 30) is **GRANTED**.  The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

**8/24/2020**                                    **s/Edmund A. Sargus, Jr._____**
**DATED**                                         **EDMUND A. SARGUS, JR.**
                                                  **UNITED STATES DISTRICT JUDGE**